H. GROVERMAN AND WIFE *vs.* CATHARINE DIFFENDERFFER, *et al.—December* 1839.

Where the husband seeks by a bill in Chancery to recover a sum or sums of money due to his wife, the equity of the wife to a settlement is unquestionable, and in such cases, it is the invariable practice to include a provision for the issue of the marriage.

Upon a bill filed by husband and wife, to recover the wife's estate, the court would not be justified, in making the terms of the settlement conform to the allegations of the bill, in the absence of proof.

The averments of the bill, after marriage, in relation to the character of the settlement to be made upon the wife, should not be taken as evidence, and form the foundation of a decree.

Such a practice would strip her of the customary guards, which a Court of Chancery, for the wisest purposes, has thrown around her interests.

In decreeing a settlement, the court should be guided by the *ante-nuptial* agreement, if there be one. If no such agreement is proved, the settlement should conform to the equity of the wife, unless she waive the same, in the accustomed mode.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 15th June 1835, upon the equity side of *Baltimore* county court, and transmitted to

the Court of Chancery on the 9th of December following. The complainants therein, the appellants, alleged that, in the year 1805, *Charles Rogers* died seized of real estate, having devised the same to his children, *Ann Martin, Mary Lee, Sarah Bailey,* and *Catharine Diffenderffer* wife of *John;* that *Ann* and *Mary* died without issue, and that by a decree of this court, *Araminta Winder,* sole heiress of *Sarah Bailey,* became entitled to a certain portion of the trust fund arising from, and constituted by, the estate of *Charles Rogers,* and that the children of the said *Catharine Diffenderffer,* namely, *Amelia,* (now *Groverman*) *Michael* and *Charles R. Diffenderffer,* to two thirds of the rents and profits of such trust funds from the 30th June 1818, that *John Diffenderffer,* father of *Amelia,* claiming the same as the natural guardian of the said *Amelia,* or as trustee for her, received her share of the rents and profits of the said estate, and at no time accounted to her. The bill then proceeded to charge, that her father had conveyed certain real property to her as a payment, at an enormous and defective valuation, and procured a release from her, she being ignorant of the contents of both papers, and solely induced to sign the latter by his misrepresentations. And after setting forth in detail the particulars of his misconduct, it further charges, that the said *Amelia* being about to be married to the said *Groverman,* the said *John Diffenderffer* proposed to the complainants, that a marriage settlement should be made of the said *Amelia's* property, at the same time presenting to complainants a draft of a conveyance to effect that object, and assuring them, that it would secure the property to the said *Amelia* so as to preclude the possibility of its being involved by her intended husband's debts, and to leave to her the absolute power of disposing of it in any form by will or otherwise in favor of her husband or of any one else; that being themselves ignorant of the true import of legal phraseology, and incompetent properly to construe instruments, such as that now mentioned, confiding in the accuracy of the said *Diffenderffer's* representations, caused no examination to be made into the terms and legal import of the said conveyance in trust,

acceded to the request of the said *John S. Diffenderffer*, and upon the faith of his representations signed said settlement. The bill then charged the marriage settlement to be fraudulent and void, and contrary to the intentions of both husband and wife; that soon after its execution the parties intermarried: the bill charged also the death of *John Diffenderffer*, and prayed supbœna against his heirs; that the deed from *John Deffenderffer* to his daughter might be vacated; that the marriage settlement might be so modified as to carry into execution the understanding of the grantors previous to its execution; that the release from *Amelia* to said *John* might be given up to be cancelled; that an account might be taken, a receiver appointed, and for general relief.

With this bill was exhibited the deed of 31st December 1834, from *John Diffenderffer* to *Amelia H. Diffenderffer*, purporting to be in consideration of $8000 paid by *Amelia* to the said *John*, and conveying to her in fee, certain real property in *Baltimore*. The release of *Amelia* to *John*, dated 2nd January 1835, acknowledging to have received from the said *John* $12,000, "which I have agreed to accept, and do hereby accept, in full payment and satisfaction of the balance of the amount due in virtue of a decree, &c., and release of all claims under such decree. The last will and testament of *John Difenderffer*, by which, after a devise of $500 to the complainant, he bequeathed his estate chiefly to *Catharine R. Diffenderffer*, his second wife, and her children.

The infant defendants answered by guardian, and an *ex parte* commission was ordered against *Catharine R. Diffenderffer* and the other adult defendants.

Under the commission a great variety of proof was taken. The marriage contract impeached by the bill, was dated the 11th February 1835, and conveyed the property of the said *Amelia* to *John Diffenderffer, Jacob Boyer* and *Charles R. Diffenderffer* in trust, to the use of *Amelia H. Diffenderffer* and her heirs, until her marriage, and after, then in trust, for the sole and separate use of the said *Amelia for life*, with power to collect rents, demise and lease, and to devise the same, in

case she should *leave more than one child*, among all her children, or to any one of them, or to any other person or persons, that she might deem advisable—after her death in default of a will, then in trust for the use of any child or children she may have; and if she should die without leaving any child or descendant, then the whole of the said lands to be held in trust for the use of the said *John* and his heirs if he shall be then living; if not, then the settlement provided for the descent of the said property to other relations, some of the whole blood, and some of the half blood of the said *Amelia*. This deed was executed by the said *H. Groverman* and wife.

At December 1837 the Chancellor (BLAND) decreed that the release from the complainant *Amelia* to her father, be declared void and of none effect; that the deed of 11th February 1835, purporting to be a settlement of the property of the said plaintiff *Amelia*, in contemplation of her marriage, then shortly to be had and solemnized with the plaintiff, *Henry Groverman*, be and the same is hereby declared null and void, in so far as the same may be at variance with a settlement of all her property, by a deed to be executed by the said *Henry Groverman* and *Amelia H.* his wife, unto the said *Jacob Boyer* and *Charles R. Diffenderffer*, to be held in trust, to apply the rents and profits and dividends thereof, to the separate use of the said *Amelia* during her life, without power in her to make any incumbrance or anticipation thereof, remainder to such of her children or their descendants, in such proportions and manner as she shall, by an instrument of writing executed and signed, &c., declare and appoint; and on her failing to make any such appointment, then to her heirs and next of kin on the part of her mother, according to the acts of assembly in such case made and provided, in relation to the descent and succession of real and personal estate, in like manner as if she had died unmarried and intestate. The decree then proceeded to appoint a receiver of the rents, &c., refer the cause to the auditor, and declaring the principles on which the said deceased *John Diffenderffer's* representatives should now account with the complainants, with the usual authority to take proof.

From this decree the complainants appealed.

The cause was submitted to BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

By MAYER and WARD on a written argument for the appellants.

The appellants were plaintiffs below, claiming among other things, that an ante-nuptial settlement executed by them should be vacated. This settlement was a deed of trust from the plaintiffs to *Jacob Boyer* and *John Diffenderffer* and *Charles Rogers Diffenderffer*, conveying to them all *Mrs. Groverman's* (then *Miss Diffenderffer's*) real estate, to be enjoyed by her for life, and devisable by her; and, in case of no devise, then, 1st, to her children—2nd, if no children, to *John Diffenderffer* aforesaid, her father, and his heirs, if he should survive her; and if he should not, then—3rd, to *Charles Rogers Diffenderffer* and his issue, and in case of his leaving no children, then 4th, to *Rosalba Diffenderffer* (half sister of *Mrs. Groverman,*) and her heirs. The *devising power* of *Mrs. Groverman* under the deed may be construed to be *limited* to the event of her having *more than one* child at her death. The bill seeks to set aside this deed on the ground of imposition by *John Diffenderffer*, the father of *Mrs. Groverman*, and who was a trustee and *cestui que trust* in the settlement.

The chancellor has decreed that the deed be set aside; but proceeds then to prescribe a new settlement of the estate of *Mrs. Groverman,* which is, that *"all the property"* of *Mrs. Groverman* be conveyed to secure to her use for life the rents, profits and dividends, with power to her to dispose of it *by will* among such children as she may have, and, in default of disposition in that way among her children, then to her heirs or next of kin on part of her mother, according to the acts of assembly relating to descent and succession of real and personal estate.

There is no testimony, nor any admission, of any agreement between the plaintiffs, or between them and *Diffenderffer*, or

any one else, for an ante-nuptial settlement.     Nothing bearing upon an assent or a wish, as to such an arrangement, exists in the case, except what may be deduced from the allegation in the bill, which is, "Your oratrix and orator aver that they were then informed" [when the deed was presented for their execution] "by said *Diffenderffer*" [the father] "that the object and effect of said conveyance in trust were to secure to your oratrix the use of her estate, so as to preclude the possibility of its being involved for her intended husband's liabilities, and to leave to her the absolute power of disposing of it in any form, by will or otherwise, in favor of your orator when her husband, or of any one else."

The settlement in fact, which, according to this averment of the bill, was meant, was the ordinary settlement in this State, which assures the estate to the separate use of the wife during her life, without liability for the rent or future husband's debts or engagements, with power to her to dispose of it by deed or will, or writing in nature of a will, and, in default of appointment, to her children and their heirs, or the persons and their heirs who by the laws of *Maryland* may at her death be her heirs and next of kin.

Although the Court of Chancery here has vacated the deed, it makes a settlement very little better than the fraudulent one set aside, except so far as it excludes the father and his heirs, and *Mrs. Groverman's* brother and half sister.     There appears no reason why the ordinary settlement should not be here adopted and *Mrs. Groverman preserve* her right over her own property, guarding it only against her husband's debts, and making her dispositions of her property dependent on her exclusive pleasure, excepting only that she *be prevented from making any mortgage or pledge of any part of her estate, or its rents or income, for the liabilities of any husband;* a provision which perhaps ought to be introduced into all settlements, *beside* the usual general provision, that the estate is not to be liable for the husband's liabilities.

*Mrs. Groverman* has not *forfeited* her rights of property in her estate; but the settlement prescribed debars *her* of all the

*usual* rights of disposing of it, and through her trustees of making any change of investment, no matter how advantageous or even *vitally* important a disposition of it might at any time prove. Why not adopt the terms of the understanding for a settlement as alleged in the bill, and to which the fraudulent settlement is prayed to be modified, and which terms conform to the usual limitations guarding the estate against the husband's involvements, but *continuing* to the wife her *rightful claim and her control over it?* If any misconduct of the husband were shown, there might be reasons for peculiar strictness as against him, but even then the wife's disposing powers ought not to be interfered with. But here there is no impeachment of him; and both husband and wife are before the court in the most favorable light.

Beside the terms of the decree would seem to require a settlement by the husband and wife of "*all the property*" of the wife, embracing thus the *personal* as well as real estate, while only the latter is comprehended in the deed of settlement complained of. In this respect, too, the decree should be reformed, and the settlement to be made, limited to the real estate. It is also suggested that the parties should have liberty to *name trustees* to the chancellor, and they should not *as a matter of course* have *Charles Rogers Diffenderffer* and *Jacob Boyer*, the trustees of the repudiated deed, set over the estate.

We beg leave to submit to the court, that the power of the court to prescribe a settlement attaches *here only*, from the admitted understanding set forth in the bill; and which must, then, be in all respects conformed to; and does not derive itself from the general principle that where *a husband* seeks to recover his wife's fortune, and must, from the *nature* of the *estate* or *claim*, apply to equity, a settlement will be enforced. This is a complaint by *husband and wife*, and an attempt only to *disenthral* an estate already in her.

ARCHER, J., delivered the opinion of the court.

The decree of the chancellor, so far as it has placed in trust all the property of *Mrs. Groverman*, and as to the limitations

of trust by it prescribed, is objected to by this appeal, and it is insisted that, as the *ante-nuptial* settlement has been set aside as fraudulent, and there is no proof in the record of the terms originally agreed on, as the terms of settlement, the chancellor had no other guide, than the terms set out in the complainant's bill, and that his decree should have carried them out, at least substantially.

The bill filed in this cause seeks to set aside an *ante-nuptial* settlement as fraudulent, and also a release executed by *Mrs. Groverman* to *John Diffenderffer* her father, anterior to the marriage, and it further seeks to recover from the estate of her father, all sums of money due to her from her father, as guardian or trustee, in pursuance of a decree of the Court of Appeals at December term 1831.   So that the equity of the wife to some settlement is unquestionable: the husband seeking not only to remove out of the way fraudulent deeds, but to recover the wife's portion from the estate of her father.

What shall be the nature, extent, and character of this settlement which is to be made, must depend upon the proof hereafter exhibited in the cause, and the extent of the recovery to be had.   The husband seeking equity is compelled to do equity, and a court of equity will make him provide for her, and where a settlement is decreed, it is the invariable practice to include a provision for the issue of the marriage, unless the wife waives the right to the settlement, according to the manner prescribed by the practice of a court of equity.

The settlement decreed by the chancellor was not, we presume, founded upon the wife's equity.   The deed declared to be fraudulent and void, principally, if not entirely, embraced real estate.   If these are to be settled on the wife, it should be in pursuance of some understanding or agreement, proven to have existed anterior to the marriage.

We can perceive no evidence in the record, which will authorize us to sanction the terms of the decree, nor do we think we should be justified in making the settlement conform to the allegation of its terms in the bill, in the absence of proof.   It would lead to pernicious consequences, if the averment by the

wife, after marriage, in relation to the character of a settlement to be made upon her, should be taken as evidence, and form the foundation of a decree. Although such might be the result here, the danger would be, that her admissions, thus made in a bill, would tend to strip her of those customary guards, which a court of chancery for the wisest purposes has thrown around her interests.

We think that this decree should be reversed, so far as the same settles *all* the property of the wife in the mode therein designated, and that it should be remanded to the Chancery Court, that proof should be taken of the ante-nuptial agreement, if any existed, and that it may be decreed in conformity to such proof, and that if no proof shall be found to exist, of such agreement, that then the chancellor may in the progress of the cause, when he shall have the necessary evidence before him, decree such a settlement as shall conform to the wife's equity, unless the same shall be waived in the accustomed mode.

DECREE REVERSED IN PART AND CAUSE REMANDED.